May it please the Court, I am Blair O'Connor and I again represent the government in this matter. Your Honors, the issue the government is asking this Court to consider in this case is whether the Supreme Court's decision in Zavidas v. Davis and this Court's decision in Zai v. INS apply to excludable non-resident aliens who are ordered excluded under the pre-ARRERA version of the provision that does not apply to excludable aliens and therefore does not govern Petitioner's case. We assert that Petitioner is being lawfully detained under pre-ARRERA law and this Court's holding in its decisions of Barrera v. Risen and Alvarez-Mendez v. Stock. Pursuant to Section 309 C-1 of ARRERA, the amendments made by Subtitle A, which included the amendments made to the agency's detention authority at 8 U.S.C. 1231 A-6, those amendments shall not apply in the case of an alien who is in exclusion proceedings before ARRERA's effective date of made by ARRERA. ARRERA did not repeal any of the pre-existing provisions with respect to aliens who are in exclusion proceedings before April 1, 1997. Their cases, including their post-order detention, continue to be governed by pre-ARRERA law, which for excludable aliens who are convicted of one or more aggravated felonies, was 8 U.S.C. 1226 E. How can we test a current detention under a repeal provision of the statute rather than the current statutory provision that governs detention? Well, that's the crux of this whole case, Your Honor. And we would say because 236 E, the former 236 E, was not repealed for aliens who are under orders of exclusion prior to April 1, 1997. And that is made clear by Section 309 C-1 of ARRERA. Well, I would have thought 309 C-1 would govern like a substantive standard or a standard that was involved in proceedings up to the point of an order of deportation. But that once there's an order of deportation or of removal, that, you know, that proceeding, the I.N.S. proceeding is over. And now we're talking about detention of someone subject to an order and that you're under the current statute on current detention. Again, Your Honor, we would say — You're wrong with my reasoning. I realize that's contrary to the government's position, so I don't expect you to agree with me. But what would be your best argument that I'm off-base in that? Your Honor, I would say that the — first, I would say the plain language of the statute, that the amendments made by the subtitle, which include the amendments to the Attorney General's Detention Authority, shall not apply if the alien had been ordered excluded, meaning that he is still being detained under the pre-ARRERA statute regarding detention. Secondly, I would argue that at least one court, the Seventh Circuit, and Carrera has held that — Carrera, Valdez v. Perryman, has held that former 8 U.S.C. 236e applies to persons who, like Carrera, were subject to an order of exclusion when ARRERA took effect on April 1, 1997. Wouldn't Carrera be a case that doesn't — in a circuit that doesn't follow the rule that we adopted in Shea? Well, again — I would say Zadvides doesn't apply to someone who's an alien who's excluded. Well, again, Your Honor, we would say Z — the Z case is limited to us holding that it applied to inadmissible aliens, aliens who were ordered admissible in removal proceedings post-April 1, 1997. Therefore, it is clear that they're being detained under Section 231a-6, which is a provision that the Supreme Court interpreted in Zadvides, And that because Mr. Martinez-Vasquez was clearly ordered excluded well before April 1, 1997 — he was ordered excluded in 1992, I believe — that, therefore, he is being detained under the former provision, which is 236e, which this Court interpreted in Alvarez-Mendez to say that under that provision, the Attorney General could keep an excludable alien in detention — in prolonged detention. And that did not violate the Constitution. Wasn't the party — the alien involved in Zadvides himself someone who would have fallen under the old statute, under the argument you're offering to us? But the Supreme Court applied the current statute to his situation. Okay. Yes, Your Honor. Zadvides did involve a deportable alien, not an excludable alien, but someone who had been deported, ordered deported, prior to April 1, 1997. The answer to that, as set forth in our brief, and it does get complicated, is that when Congress passed ERIRA, they passed a transitional period custody rules that only apply to deportable aliens who would be detained under either Section 440c of ADEPA or under the new Section 236c, which recorded mandatory detention of criminal aliens, deportable criminal aliens who are in removal proceedings. And under those transitional period custody rules, Congress gave the Attorney General to suspend the application of those two provisions and to release aliens during that period. And once they expired in 1998, Congress said new law would apply, even if someone had been deported. But the agency has been consistent throughout the passage of these laws that the transitional period custody rules only apply to deportable aliens and not to excludable aliens. Your Honor, you're trying to carve this situation out of Zadvides and the Xi case and say that in this case, if Cuba won't take this person back to Cuba, that the I.N.S. could detain him for the rest of his life? Your Honor, we would say that, you know, it's not – Pardon me? We would say this is not by no means necessarily indefinite detention. I mean, we are successfully repatriating Cuban – Mario Cubans to Cuba. So it's not indefinite, but yes, because – The question is, if Cuba would not take him, if you weren't successful in that, then you – under your interpretation, you would say you could keep him forever. Because he's being detained under the old law, which this Court interpreted in Brera and Alvarez, the answer is yes, Your Honor. That interpretation was before Zadvides. And I mean, it's surely questionable in light of Zadvides and Xi whether that interpretation could be governing now. Your Honor, again, we would say that interpretation was not before the Supreme Court in Zadvides because the Supreme Court reiterated in Zadvides that there's a difference between excludable aliens who had never affected an entry – Well, I know they did that, but we addressed that in Xi. With respect to – I was on that panel, and there are two of us who concluded that once the statute was interpreted, it had to apply to all the aliens the same way. I understand, Your Honor. I agree with you. The thing is that in Xi, this Court made clear that it was purely a statutory holding, with that statute being 231A6. That's right. And that if it had been a constitutional issue, the result might have been different. And we're saying that because Section 309C1 of Brera makes clear, the language is explicit, that the amendments, including the amendments regarding the Attorney General's detention authority, would not apply to excludable aliens that he's being detained under the old law. I understand that. That's a good argument. But basically, we don't have to reach a constitutional challenge to the old statutory provision if we interpret the transition rule to not carry weight on this. In other words, if we interpret the statutes to say his detention now is under the current – is under the current detention provision. Again, Your Honor, we would continue to disagree. But I know you don't agree we should do that. But if we do that, if we say his detention, current detention, must be tested under the current statute governing detention, then we don't have to address a constitutional challenge to the old detention provision. Yes, Your Honor. We would continue to reserve the right to disagree with the Xi decision. But should new law apply, we would understand that it would be binding. Is there a cert petition pending on the – I don't know if it's pronounced Xi or Xi. It's Chinese. I thought it was a Chinese name. But is there a cert petition pending on that? There is not, Your Honor. And I would like to reserve any additional time for rebuttal. Thank you. Let me just clarify one thing. On Xi, is the time passed for a cert petition? Yes, Your Honor. But basically, the government's going to maybe challenge that, raise the issue in a different case. In a different case, Your Honor, but it was not – A different circuit. Yes. Did another circuit go the government's way on that? Excuse me, Your Honor? Do you have a circuit split now? Yes, Your Honor. The 11th Circuit, the 5th Circuit, the 8th Circuit, and the 7th Circuit have all disagreed and said that Xi or Zabidas only applies to admissible aliens. So you want to take one of those up there? Yes. In the right case, the government would definitely seek further review in the Supreme Court. Okay. Thank you. Thank you, Your Honor. May it please the Court, Jay Stansel representing Gilberto Martinez Vazquez in this case. Your Honors, I think what's missing from the government's argument throughout is common sense and natural readings of the language, starting off with 1231a6, which on its face applies to Mr. Martinez as much as it applies to Mr. Zabidas and Kim Ho Ma. The one thing I want to emphasize as to, you know, cert petitions, the government did decline to file for cert in Lin Guo Xi. The government subsequently, when Rosales-Garcia came down in the 6th Circuit, an en banc decision in the 6th Circuit, 6-3, the government did seek certiorari in that case. Certiorari was in the case. We follow our law unless or until the Supreme Court tells us we're wrong. That's correct, Your Honor. He is the law for purposes of this case. Well, Rosales-Garcia, Your Honor, is a useful case to look at because it deals directly with this issue. In the 6-3 decision there, none of the judges of the 6th Circuit supported the government's position here. They disagreed as to whether the 6th Circuit should follow Lin Guo Xi, but none of the them supported the government. Rosales-Garcia was also a pre-96 person, and the reasoning in Rosales-Garcia is very persuasive and concise. The current detention, not the past detention, is being challenged. It's interesting that the government, in part, relies on Alvarez-Mendez, who was an individual detained at a time when 1226E applied, trying to argue that he should get the benefit of a prior detention regime and argue that my current detention is unlawful because this past regime didn't fit my case. You know, this Court said it's your current, not your past, detention that's an issue. You're not challenging the lawfulness of your past detention. It's the present detention that's crucial. The natural reading of 309C1 does not include detention. There's no words about detention. In fact, it talks about, quote, the proceedings shall continue. It envisions, implicitly envisions a process that is continuing, a process that is complete for Gilberto Martinez-Vazquez and for anybody else with a final order. You're saying that the proceeding was concluded when there was a final order of removal or? That's correct. I don't think he's in proceedings for the rest of his life. I mean, under the government's theory, I mean, that would really turn the common sense English language definition of proceedings on its head to assume that you go through a divorce proceeding, but you're involved in the proceeding for the rest of your life because you have a final judgment. In the context of divorce, sometimes that seems to be the case. Perhaps that's true, Your Honor. The other thing that the government ignores is, you know, the Supreme Court has commented in a different context in St. Cyr on 309C1, and they have stated that it is, that that provision is best read as merely setting out the procedural rules to be applied to removal proceedings pending on the effective date of the statute, pending on the effective date. Under St. Cyr, if that's like a holding of St. Cyr and not a dictate, it would seem to preclude the government's argument here. Yes, it would. And St. Cyr also, and we cite as well a House report on this subject talking about 309C1 as involving transition to new procedures in the case of an alien already in exclusion or deportation proceedings. Is that definition they gave in St. Cyr of the transitional rule, is that clearly a holding of the court and not just talking about it? You know, I think it's not the central holding, Your Honor. I wouldn't say it's the central holding. It's a building block of its decision about what, you know, whether 212C was wiped out for everybody, because 212C is also a factor. It's also part of the laundry list of things that had been changed, and it said we're going to, if you read 309C1 as the government wishes to read it, I think that would contradict the Supreme Court's decision in St. Cyr. Because they're looking at it inclusive as involving everything, even if it's not mentioned, and the Supreme Court said that we're not going to do that. One of the things that I think is crucial here is the crazy quilt detention process that would be created by the government's theory. There are many, many Mario Cubans who have not, who never got ordered excluded prior to 96. They got ordered removed under the new regime of IRA-IRA. They had criminal histories, some better, some worse than Mr. Martinez-Vazquez. And so an individual exactly situated as Mr. Martinez-Vazquez came to the country in 1980, going back to Cuba if he ever goes back, and just the happenstance of, well, we put him in removal proceedings or put him in exclusion proceedings prior to 96, it makes all the difference in the world. Under this court's decision in Linguo Xi, those folks that are post-96 get out, and under the government's theory, you know, Gilberto Martinez does not. In addition, as the government attempted to clarify, and I find it horribly complicated, it involves different rules for people with deportation orders, depending upon whether they fall under the transition period custody rules of IRA-IRA, which is a 303-B2 and B3. We cite to the statutes in this case. In our briefs, quite frankly, it would take me, you know, a half hour to really formulate the different pigeonholes that different people would come into dependent upon under what substantive ground of deportation they fall under. But the fact is, some people would, under the government's theory, be held in detention pursuant to 1252, the 1994 law, which says you have six months and only six months, and so Mr. Lima would be out under that regime if he had been in a municipal order deported. Some, depending upon whether they fell under the transition period custody rules, would be fall under 1231-A6. And it just is a horribly complicated scenario when you're thinking about a Congress that has intentionally created a unitary process to simplify the whole process. The succeeding provisions of 309-C also illuminate Mr. Martinez's argument because they deal with specificity, and it shows that Congress knew how to specifically deal with, you know, suspension of deportation cases that are pending and everything. And each and every one of them deals with the process, deals with the immigration judge proceeding and judicial review from that. Any indication that any reliance that the government places on regulations that were passed that are unsupported by statute, of course, are ultra viris and have no effect in this case. And as to the argument for Chevron deference that they urged the court to follow, you know, we think that that's inapplicable as well because this is not a case like the Supreme Court dealt with in Aguirre-Aguirre where there was a term of art, which is a particularly serious crime, a term of art that they sought to interpret. And the Supreme Court in Aguirre-Aguirre did give Chevron deference to the Immigration Service, but it was in interpreting a term of art in the statute, not sorting through what this statute was, you know, the complex analysis of the retroactivity of the statute. And basically, in a sense, this case could be about banking or anything else. And we're looking at statutes and whether or not they're retroactive and involving just basic canons of statutory construction. In the end, I think we need to go back to the natural reading of the 309C1 that the government relies upon. I think we need to emphasize and urge the court to understand that it just simply makes no sense to treat some Mario Cubans in one way and others in another way. And the converse, that they would all be treated the same, you know, makes much more sense. There's no – there's no meaning that can be given proceedings, which is constantly the word that comes up in this context. There's no meaning that can be given the word proceedings that involves, you know, detention, a detention that could go on potentially for life. Thank you. Just two points, Your Honor. First, we say the opposing counsel's reliance on Alvarez-Mendez is misplaced because there, the prior detention statute was repealed and no exceptions were made. In Herrera, when Congress repealed the AG's prior detention authority, it said that that repeal would not apply to aliens who were already under orders of exclusion. As this Court noted in Herrera, the long-term detention of Mario Cubans had been the norm for four decades, and Congress had never chosen to act on that. How do you deal with the Supreme Court's definition or statement in St. Cyr about what 309 – Section 309c means? Again, Your Honor. Procedural. We would say that that's dicta and it can be distinguished because in St. Cyr, it was holding whether or not 309c1 is explicit as to Section 212c's relief or the repeal of that would apply to someone who is in removal proceedings. Okay. So you would agree that if – it might be a dicta in the sense it's not the central holding, but that if we were to follow what the Supreme Court said, the government's position here is scuttled? No, Your Honor, because again, we would say St. Cyr is just a different issue. There, that Congress's intent was not clear. We say that it is clear with respect to whether or not 236e's repeal applies to someone who is already under an order of exclusion as of April 1st. It did not apply. Therefore, he's continued to be detained under the old section. Thank you, Your Honors. Thank you. I thank both counsel. The case is submitted.
judges: Alarcon, Gould, Clifton